UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONTELE SWANSON-DEVILL GOODWIN,

     Petitioner,

v.

                                   Case No. 21-cv-11724
                                   HON. MARK A. GOLDSMITH

JEFFREY HOWARD,[1]

     Respondent.

_____/

## OPINION & ORDER
## (i) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (ii) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (iii) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Jontele Swanson-Devill Goodwin, incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for: (i) two counts of possession with intent to deliver less than 50 grams of a controlled substance under Mich. Comp. Laws § 333.7401(2)(a)(iv); (ii) three counts of felon in possession of a firearm under Mich. Comp. Laws § 750.224f(2); (iii) felon in possession of ammunition under Mich. Comp. Laws § 750.224f(6); and (iv) possession of a firearm during commission of a felony (felony-firearm) under Mich. Comp. Laws § 750.227b. Petitioner was sentenced as a fourth felony habitual offender under Mich. Comp. Laws § consecutively to 360 months for each possession with intent to deliver

_____

[1] The Court amends the caption in this case to reflect that the proper respondent in this case is now Jeffrey Howard, the warden of the Kinross Correctional Facility, where Petitioner is now incarcerated. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden. See Edwards v. Johns, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); see also Rule 2(a), 28 foll. U.S.C. § 2254.

1

conviction, and 36 to 360 months for each felon-in-possession conviction, to be served consecutively to a 2-year term of imprisonment for the felony-firearm conviction.

For the reasons that follow, the petition for a writ of habeas corpus is denied.

## I.    BACKGROUND

Petitioner was convicted after a jury trial in Michigan's Monroe County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> On March 15, 2016, officers assigned to the Monroe Area Narcotics Team and Investigative Services (MANTIS) arranged a controlled buy in which an informant purchased heroin from defendant at a residence on Sigler Road in Monroe County. Defendant was renting a room in the house and allegedly supplied the owner with heroin in lieu of paying rent. On the morning of March 16, 2016, police officers searched the residence pursuant to a search warrant. The search uncovered suspected narcotics packaged in preparation for sale. Laboratory analysis revealed that the seized substances were heroin and crack cocaine. Officers also found three firearms and ammunition in the room occupied by defendant.

People v. Goodwin, No. 337329, 2018 WL 3039903, at *1 (Mich. Ct. App. June 19, 2018). Petitioner's conviction was affirmed on appeal.  Id., lv. den. 927 N.W.2d 223 (Mich. 2019).

Petitioner filed his petition for a writ of habeas corpus, challenging this conviction as well as a separate conviction for solicitation to commit murder and witness tampering.  This Court ordered the case involving Petitioner's drug and firearms convictions to be severed from that case and the clerk's office opened a second case under case number 21-11724 to permit Petitioner to challenge his drug and firearms convictions separately.  Both cases were held in abeyance so that Petitioner could return to the state courts to exhaust additional claims.  Goodwin v. Miniard, No. 21-10770, 2022 WL 298566 (E.D. Mich. Jan. 31, 2022).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied.  People v. Goodwin, No. 16-242675 (Monroe Cnty. Cir. Ct., July 5, 2022) (Dkt.

2

14-14).  The Michigan appellate courts denied Petitioner leave to appeal.  People v. Goodwin, No. 362773 (Mich. Ct .App. Feb. 3, 2023), PageID.1061 (Dkt. 14-19); lv. den.  991 N.W.2d 570 (Mich. 2023).

Petitioner filed a second motion for relief from judgment, which the trial court denied. People v. Goodwin, No. 16-242675 (Monroe Cnty. Cir. Ct., Jan. 18, 2024), at PageID.161 (Dkt. 14-20).  At the time Petitioner moved to reopen his habeas petition, his appeal from the denial of his second post-conviction motion was pending in the Michigan Court of Appeals.  The Michigan Court of Appeals has since denied Petitioner leave to appeal.  People v. Goodwin, No. 370390 (Mich. Ct. App. Aug. 26, 2024).  Petitioner did not file an application for leave to appeal with the Michigan Supreme Court and his fifty-six-day time period for filing such an application pursuant to Mich. Court Rule 7.305(C)(2)(a) has now expired.[2]

This Court has reopened the case and permitted Petitioner to file an amended habeas petition.  2/15/24 Op. and Order Lifting Stay (Dkt. 10).  Petitioner seeks habeas relief on the following grounds: (i) Petitioner's trial counsel was ineffective for failing to move for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to challenge the veracity of the affiant to the search warrant; (ii) trial counsel was ineffective for failing to stipulate that Petitioner was a convicted felon, to prevent the jury from learning the specifics of his felony history; (iii) Petitioner was denied a fair trial because of prosecutorial misconduct; (iv) the evidence was insufficient to convict; trial counsel was ineffective for failing to call an alibi witness; (v) appellate counsel was ineffective in failing to obtain documents and records to support his claim on appeal that trial

---

[2] See People v. Goodwin, Court of Appeals Case No. 370390 docket
https://www.courts.michigan.gov/c/courts/coa/case/370390.
Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice. See Daniel v. Hagel, 17 F. Supp. 3d 680, 681, n. 1 (E.D. Mich. 2014).

counsel was ineffective for failing to demand a Franks hearing; (vi) appellate counsel was ineffective in how he framed the ineffective assistance of trial counsel claim involving the failure to request a Franks hearing on Petitioner's appeal of right; and (vii) appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for permitting a prosecution witness to invoke her Fifth Amendment right against self-incrimination in front of the jury.

## II.    STANDARD OF REVIEW

Title 28 of the United States Code, Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court

4

decision applied clearly established federal law erroneously or incorrectly." Id. at 410–411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.[3]

### III.   ANALYSIS

#### A.  Statute of Limitations

As part of the answer, respondent argues that the case should be dismissed on the ground that the petition was not timely filed. Answer at PageID.170–183 (Dkt. 13). Petitioner admits that his petition is untimely but argues that the limitations period should be equitably tolled because the various restrictions imposed by the prison system to prevent the spread of COVID-19 prevented him from being able to timely file his habeas petition. See Pet. PageID.13, 29–30 (Dkt. 1); Reply at PageID.1369 (Dkt. 15).

In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." See Cooey v. Strickland, 479 F.3d 412, 415–416 (6th Cir. 2007). AEDPA applies to all habeas petitions filed after the Act's effective date, April 24, 1996, and imposes a one-year limitations period for habeas petitions. 28 U.S.C. § 2244(d)(1). Petitioner's

---

[3]Respondent contends that Petitioner's third, fourth, fifth and sixth claims are procedurally defaulted for various reasons. It is unnecessary to address the procedural default issue because (i) the claims are without merit; and (ii) the fifth and sixth claims are intertwined with Petitioner's first claim, which is not defaulted. See Post v. Bradshaw, 621 F.3d 406, 426 (6th Cir. 2010) ("We need not address the procedural default issue, however, as the claim fails even under de novo review.").

habeas petition was filed after April 24, 1996, and, therefore, the provisions of the AEDPA, including the limitations period for filing a habeas petition, apply. See Lindh v. Murphy, 521 U.S. 320, 337 (1997).

Title 28 of the United States Code, Sections 2244(d)(1)(A) through (D) state:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The AEDPA's statute of limitations, however, "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). A habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented the timely filing of the habeas petition. Id. at 649 (punctuation modified). The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." See Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010). The burden is on a habeas petitioner to show that he is entitled to equitable tolling of the one-year limitations period. Id.

Petitioner claims that various restrictions imposed by the Michigan Department of Corrections to prevent the spread of COVID-19 in the prison system led to the closure of the prison

6

law library, various lockdowns, and the temporary suspension of in-person attorney visits, which Petitioner alleges prevented him from timely filing his habeas petition.

The restrictions placed on prisoners like Petitioner by the Coronavirus could potentially entitle him to equitable tolling for the time that it took him to file his petition.  See Brown v. Davis, 482 F. Supp. 3d 1049, 1058–1059 (E.D. Cal. 2020) (extraordinary circumstances caused by COVID-19 pandemic rendered habeas petitioner unable to file timely habeas petition, and thus district court prospectively equitably tolled limitations deadline for filing petition).

On the other hand, Respondent argues that Petitioner is not entitled to equitable tolling due to the COVID-19 restrictions because he failed to show due diligence in filing his habeas petition in the months before the COVID-19 restrictions were put into place.  Respondent also argues that Petitioner failed to offer specific details as to why the various COVID-19 restrictions impeded his ability to file his petition on time.

It is true that "the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis.  The petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion." United States v. West, 578 F. Supp. 3d 962, 967 (N.D. Ohio 2022).  The argument over equitable tolling need not be resolved.

The statute of limitations does not constitute a jurisdictional bar to habeas review, thus, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. See Smith v. State of Ohio Dept. of Rehabilitation, 463 F.3d 426, 429, n. 2 (6th Cir. 2006) (quoting Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir. 2006)).  Simply put, this Court need not resolve the dispute over the timeliness of the petition.  Assuming without deciding that the petition was

timely, Petitioner's habeas application fails on the merits.  See Ahart v. Bradshaw, 122 F. App'x 188, 192 (6th Cir. 2005).

### B.  Claims 1, 2, 4, 5, 6, and 7: Ineffective Assistance of Counsel

Petitioner alleges in his first, second, fourth, and seventh claims that he was denied the effective assistance of trial counsel.  In his fifth, sixth, and seventh claims, Petitioner alleges he was denied the effective assistance of appellate counsel.  To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-part test.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Id.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  Id. at 689.  In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  Id.  Next, the defendant must show that such performance prejudiced his defense.  Id. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  The Strickland standard also applies to claims of ineffective assistance of appellate counsel.  See Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005).

In his first claim, Petitioner argues that trial counsel was ineffective for failing to move in the trial court for a hearing pursuant to Franks v. Delaware, 438 U.S. 154, to challenge the credibility of the affiant to the search warrant of the residence where the drugs and firearms were seized.  In his fifth claim, Petitioner alleges that appellate counsel was ineffective for failing to obtain certain records and documents that would support his claim on appeal that trial counsel was ineffective for failing to request a Franks hearing.  In his sixth claim, Petitioner argues that

appellate counsel was ineffective in how he framed the Franks claim with respect to the ineffective assistance of trial counsel claim because he focused on the credibility of the informant, and not the credibility of the affiant.

To prevail on a claim that counsel's failure to competently litigate a Fourth Amendment claim constitutes ineffective assistance of counsel, a defendant must also prove that (i) his Fourth Amendment claim is meritorious; and (ii) there is a reasonable probability that the verdict would have been different absent the excludable evidence, to demonstrate actual prejudice.  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

Petitioner's amended petition argues that his counsel should have requested a Franks hearing to challenge the credibility of the affiant to the search warrant, Detective Sean Streets.  He argues that his counsel should have requested this hearing and requested to quash the warrant and suppress the evidence seized in this case.  He sets forth the following facts to support his argument:

- In his affidavit, Streets stated that, during surveillance of the residence, he overheard a man and woman talking.  However, at trial, Streets testified there was no audiotape of the surveillance.

- In his affidavit, Streets stated that he observed Petitioner in possession of two firearms during the surveillance.  However, another officer at the surveillance—Detective Michael McClain—only saw a white man on the porch of the house in possession of a shotgun when the informant, Bernard Cobb II, approached the house.  Since Petitioner is African American, he argues Streets's affidavit is inconsistent with what McClain saw.

- In his affidavit, Streets stated that the informant told him that he observed Petitioner's Audi in the driveway of the residence where the drugs and firearm were seized.  However, Detective McClain was unable to verify the vehicle's license plates to connect the vehicle to Petitioner.

- In his affidavit, Streets stated that he observed a red PT Cruiser pull up to the house, where a passenger exited the vehicle, walked into the residence, and then left after three minutes.  Streets believed a drug deal that had just taken place.  Streets, however, did not pull the vehicle over to see if the occupants had purchased drugs at the house.

- In his affidavit, Streets stated that Charles Ray Knuckles told him that he purchased heroin from the home numerous times from Petitioner.  However, there was no evidence to

corroborate Knuckles's assertions that he purchased heroin or that Petitioner resided at the house.

- Streets stated that he received other information that Petitioner lived at this residence. However, Streets did not obtain any documentation (such as electric or telephone bills) to show that Petitioner actually lived there.

- Streets stated in his affidavit that Petitioner was a huge narcotics dealer with large amounts of cocaine and heroin located in a safe in the house. But at trial, Streets testified that the safe was empty when the house was raided.

- Streets admitted in the affidavit that his informant was being paid by the state. However, he omitted a fact: the informant had been convicted of theft.

Mot. to Lift Stay and Amend. Pet. at PageID.96–98 (Dkt. 9).

In Franks v. Delaware, 438 U.S. 154, the United States Supreme Court held that an affidavit of probable cause in support of a request for a search warrant that is valid on its face may be challenged by a defendant if it can be shown that (i) the affidavit contains intentionally or recklessly false statements, and (ii) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. Id. at 171–172. The Supreme Court in Franks enunciated the prerequisites for obtaining an evidentiary hearing:

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Id.

The Michigan Court of Appeals rejected Petitioner's claim that trial counsel was ineffective for failing to request a <u>Franks</u> hearing.  It stated:

> Defendant argues that Detective Sean Street's affidavit was deficient because it failed to address the informant's veracity or reliability. In fact, the affidavit states, 'Affiant certifies that the CI is credible and reliable accredited to the below listed facts gathered by Affiant ....' Moreover, the affidavit states that the informant's information regarding defendant's narcotics dealings at the Sigler Road residence was corroborated by an anonymous source. Defendant notes that the informant was compensated for participating in the controlled buy, which defendant argues likely affected his credibility. However, the purpose of a <u>Franks</u> hearing is to address the veracity of the affiant, not an informant. Defendant raises disparities between Street's trial testimony and the affidavit, but none of these rises to the level of a material discrepancy. At most, defendant has shown some minor discrepancies that do not rise to the level of a deliberate falsehood or reckless disregard of the truth. Accordingly, defendant has failed to make a sufficient preliminary showing of a false statement entitling him to a <u>Franks</u> hearing.

<u>People v. Goodwin</u>, 2018 WL 3039903, at *3 (internal citations omitted).

Petitioner raised his related ineffective assistance of appellate counsel claims in his post-conviction motion for relief from judgment.  The judge rejected the claim.  It found that Petitioner's appellate counsel had raised a claim that Petitioner's trial counsel was ineffective for failing to request a <u>Franks </u>hearing.  The court found that the Michigan Court of Appeals had rejected the claim, by finding that Petitioner was not entitled to a <u>Franks</u> hearing.  Accordingly, the court found that trial counsel was not ineffective.  <u>People v. Goodwin</u>, No. 16-242675, *5 (Monroe Cnty. Cir. Ct., July 5, 2022), at PageID.749 (Dkt. 14-14).

The two court decisions are reasonable, precluding habeas relief on Petitioner's ineffective assistance of trial and appellate counsel claims.

First, in spite of Petitioner's protests to the contrary, much of his attack on the reliability of the affidavit for the search warrant revolves around the credibility of informants Cobb and Knuckles.  The Supreme Court admonished in <u>Franks</u> that "[t]he deliberate falsity or reckless

11

disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant." Franks, 438 U.S. at 171. A defendant is not entitled to a Franks hearing where the defendant's affidavit does "not necessarily call into question the veracity of the affiant." United States v. Giacalone, 853 F.2d 470, 476 (6th Cir. 1988) (emphasis original).

Second, Petitioner would not be entitled to a Franks hearing based on the minor inconsistencies between Detective Streets's allegations in his search warrant affidavit and his trial testimony. For example, Streets's statement in his affidavit that he overheard a man and woman talking at the house during surveillance is not necessarily contradicted by his trial testimony that he did not audiotape the surveillance. Likewise, the Streets's allegation in the search warrant affidavit that Petitioner kept large amounts of narcotics in a safe at the house is not incredible simply because no narcotics were found in the safe at the time of the raid. Petitioner would not be entitled to a Franks hearing because Detective Streets's allegations in the search warrant affidavit were not materially different from his trial testimony. See United States v. Israel, 662 F. App'x 382, 389 (6th Cir. 2016).

Moreover, the fact that Detective McClain may have observed events differently during the surveillance would not entitle Petitioner to a Franks hearing. That alone does not establish that Detective Streets knowingly or recklessly included false information in the affidavit. See United States v. Tillage, 404 F. App'x 722, 724 (4th Cir. 2010) (Defendant was not entitled to full Franks hearing on whether, in applying for affidavit to search motel room in which defendant was staying based on clear smell of marijuana that officer perceived emanating from room, police officer had intentionally omitted a material fact in not mentioning that his fellow officer had not noticed this marijuana smell; defendant failed to make a substantial preliminary showing that officer omitted

12

material fact knowingly or recklessly, and mere fact that another officer on scene did not smell marijuana did not defeat the probable cause established by first officer's observations).

Petitioner has failed to show that the search warrant affidavit contained false statements. Thus, trial counsel was not ineffective for failing to request a <u>Franks</u> hearing; nor can Petitioner show that he was prejudiced by appellate counsel's handling of Petitioner's ineffective assistance of trial counsel claim on Petitioner's appeal of right.  See <u>Harris v. United States</u>, No. 23-5889, 2024 WL 1537919, at *2 (6th Cir. Apr. 1, 2024) (trial counsel was not ineffective for failing to request <u>Franks</u> hearing because "It is unlikely that counsel could have made the showing necessary to obtain a <u>Franks</u> hearing because the alleged deficiencies in the warrant affidavit and the alleged discrepancies between the affidavit and later testimony do not establish that the affiant knowingly or recklessly included a false statement in the affidavit.").

Finally, this Court has reviewed Detective Streets's search warrant affidavit.  Aff. for Search Warrant at PageID.842–849 (Dkt. 14-18).   Within the affidavit, there are various allegations that would be sufficient to support the granting of a search warrant, absent the alleged deficiencies with the credibility of the affiant or his informant:

- Streets in his affidavit stated that, on March 15, 2016, the informant told him that he could purchase heroin from a Black Male that he referred to as "Jay" at 3311 Sigler Road in Ash Township, Monroe County, Michigan.

- On that date, the affiant searched the informant prior to the drug buy for drugs and money and none were found on him.  Another officer searched the informant's vehicle and also found no money or drugs.

- Streets's affidavit stated that the informant was provided with pre-recorded funds in the amount of $100.00 to purchase heroin from "Jay" at the Siglar Street address.

- Streets and another officer maintained visual contact of the informant the entire time he went into the residence and came out of the residence.  They overheard the informant talking to a male and female inside the residence.  The informant then exited the residence and informed Streets that he had paid "Jay" the $ 100.00 dollars and had received .9 grams of heroin from "Jay."

13

- The informant gave Streets the heroin which he had just purchased and it field-tested positive for heroin.

- The affidavit also indicates that an anonymous source informed Streets that a man named Jontele Morrow was selling large amounts of cocaine and heroin from the Siglar Road address.  Detective Streets indicated he checked on Facebook and found that Jontele Goodwin had a Facebook page under the name of Jontele Morrow.

- Detective Streets indicated that Charles Knuckles told him that he twice purchased narcotics from Petitioner at this address.

- Detective Streets testified that he reviewed a report from a Monroe Police Department detective who had detained Petitioner for a narcotics investigation in the City of Monroe.  Petitioner gave the detective permission to search his cellular phone.  The detective in his report indicated that he searched Petitioner's cell phone and observed multiple requests for narcotics from narcotics users.

Id. at PageID.846–849.

Because there was sufficient information to support the issuance of a search warrant even excluding the alleged deficiencies in the affidavit, counsel was not ineffective in failing to conduct a Franks hearing or to otherwise investigate in anticipation of such a hearing, nor was appellate counsel ineffective in how he framed the Franks issue on appeal.  See Fudge v. United States., 673 F. Supp. 2d 568, 576–577 (W.D. Mich. 2009).

Finally, Petitioner's fifth claim must be rejected because he has failed to identify what additional documents or information appellate counsel should have obtained to support Petitioner's ineffective assistance of trial counsel claim on appeal.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998).  Accordingly, Petitioner is not entitled to habeas relief on his first, fifth, or sixth claims.

Petitioner's second claim alleges that trial counsel was ineffective for failing to stipulate to the fact that Petitioner was a convicted felon and ineligible to possess a firearm or ammunition and

14

instead stipulated to the specific facts that Petitioner had previously been convicted of assault with a dangerous weapon and unarmed robbery. Petitioner argues that this allowed the prosecutor to use this broad stipulation to repeatedly remind the jury that Petitioner had a history of violent offenses.

The Michigan Court of Appeals rejected the claim as follows:

The record discloses that defense counsel agreed before trial to stipulate that defendant was previously convicted of unarmed robbery, felonious assault, and uttering and publishing a false instrument. However, the trial record does not indicate that this stipulation was, in fact, presented to the jury. The prosecutor referred to the stipulation in opening statement and closing argument, but the stipulation was not actually introduced at trial, and the trial court instructed the jury that the attorneys' statements are not evidence. Defendant's status as a convicted felon was independently established by defendant's probation officer, Lori Lehmann, who testified at trial that defendant was on probation for an unspecified felony conviction on March 15-16, 2016. Defendant contends that he was prejudiced by the jurors' knowledge that he was convicted of unarmed robbery and assault with a dangerous weapon, but other than the prosecutor's statements during opening statement and closing argument, the factual basis of defendant's argument is not supported by the record. Although defense counsel's statement at the pretrial hearing can be construed as a stipulation that defendant was previously convicted of the specific offenses of unarmed robbery and felonious assault, there is no record establishing that this stipulation was actually presented to the jury.

In analyzing a claim of ineffective assistance, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." People v. LeBlanc, 465 Mich. 575, 578, 640 N.W.2d 246 (2002), quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). There is no apparent strategic basis for disclosing defendant's felonies instead of stipulating to the fact that he was a felon ineligible to possess a firearm. See Old Chief v. United States, 519 U.S. 172, 185, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); People v. Swint, 225 Mich. App. 353, 378, 572 N.W.2d 666 (1997). But because the record does not establish that the challenged stipulation was actually presented to the jury, defendant cannot establish that he was prejudiced by counsel's stipulation.

Defendant also argues that he was prejudiced by the stipulation to the extent that it permitted disclosure of his recent parole and probation status at the time of the charged offenses. As indicated, however, the stipulation was not actually presented to the jury. Lehmann's testimony that defendant was on probation for an unspecified felony is comparable to the non-specific stipulation that defendant

15

argues was the appropriate strategy. Accordingly, this portion of defendant's argument is also without merit.

People v. Goodwin, 2018 WL 3039903, at *2.  As mentioned by the Michigan Court of Appeals, there is no indication that trial counsel agreed that Petitioner's prior convictions should be admitted into evidence.

Before the trial, defense counsel stipulated that defendant was previously convicted of unarmed robbery, felonious assault, and uttering and publishing a false instrument.  However, the stipulation was not presented to the jury.  The prosecutor referred to the stipulation in opening statement and closing argument, but the stipulation was not actually introduced at trial, and the trial court instructed the jury that the attorneys' statements are not evidence.  Therefore, Petitioner is not entitled to habeas relief on his second claim.

As part of his fourth claim, Petitioner alleges that defense counsel was ineffective for failing to adequately investigate Petitioner's alibi defense.  Petitioner alleges that because Troyneisha Patterson testified that she was not sure of the exact time that she drove Petitioner to an auto repair shop on March 15, 2016, defense counsel should have called the owner of the auto repair shop, Joe Lakes, to support the alibi defense that he was not present when the controlled drug buy took place.[4]

The Michigan Court of Appeals rejected Petitioner's claim as follows:

Patterson testified that she dropped off defendant to pick up his car from a repair shop at 4:00 p.m., and that he remained with her until 7:00 or 8:00 p.m. This testimony placed defendant away from the Sigler Road home at the time the informant called defendant about the controlled buy at 5:30 p.m. Patterson's credibility was undermined by the conflict between her testimony and a text message on defendant's phone, in which he informed another person at 2:30 p.m.

---

[4] Petitioner raised this claim in a pro se Supplemental Standard 4 Brief with the Michigan Court of Appeals, at PageID.1027–1031 (Dkt.14-18).  Because of the brevity of Petitioner's original and amended petitions and his reply brief concerning this claim, this Court will refer to Petitioner's state court pleadings.

16

that he had just picked up his car. Patterson also admitted that she did not remember exact times, that she did not come forward with her information after defendant's arrest, and that she was uncooperative when questioned by Detective Streets. Therefore, defendant argues, defense counsel should have investigated the owner of the repair shop as a potential alibi witness. Even if it would have been prudent to investigate the repair shop owner, defendant has not provided any offer of proof indicating whether this witness could have given favorable alibi testimony. Accordingly, defendant has not established that he was deprived of a substantial defense.

People v. Goodwin, 2018 WL 3039903, at *6.

Petitioner is not entitled to relief on this claim because he failed to provide to the Michigan courts or to this Court an affidavit from the auto shop owner concerning his proposed testimony and willingness to testify on Petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d at 771. Petitioner did not offer the Michigan courts or to this Court any evidence beyond his own assertions that the auto shop owner would have been able to testify and what the content of his testimony would have been. In the absence of proof on these points, Petitioner is unable to establish that he was prejudiced by counsel's failure to call the auto shop owner to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. See Clark v. Waller, 490 F.3d 551, 557 (6th Cir. 2007).

In light of Petitioner's text message that he had just picked up his car at 2:30 p.m., the jurors could reasonably infer that Petitioner left the auto shop soon afterwards. The controlled buy with Cobbs did not happen until 5:30 p.m. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. See Millender v. Adams, 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted). The failure to present a proposed alibi witness who would not lead to a defendant's acquittal does not amount to the ineffective assistance of counsel. Id. Because Petitioner's proposed alibi witness could not have provided an "air-tight"

17

alibi defense, counsel was not ineffective for failing to call him to testify at trial.  See Moore v. Parker, 425 F.3d 250, 253–254 (6th Cir. 2005).

In his seventh claim, Petitioner alleges that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for allowing prosecution witness Jessia Maria Cochran to plead the Fifth Amendment in the presence of the jury, rather than invoking that right outside of the jury's presence.

On the first day of trial, before calling Jessica Cochran to testify, the prosecutor asked to approach the bench.  Jury Trial Tr. Vol. 1 at PageID.575 (Dkt. 14-9).  Following that conference, the trial court released the jury into the jury room.  Id.  Outside the presence of the jury, Cochran indicated that she was going to assert her Fifth Amendment right not to testify.  Id. at PageID.577.  The prosecution indicated that, outside the presence of the jury, Cochran indicated that she was going to assert her Fifth Amendment right not to testify.  Id.  The prosecution indicated that it was satisfied, but trial counsel indicated that he wanted the assertion made in front of the jury.  Id.  The prosecutor indicated that it was not proper to call Cochran as a witness to assert the right in front of the jury.  Id. at PageID.577–578.  Trial counsel specifically noted, "I'd like it asserted in front of the jury . . . that she's going to take her Fifth . . . Well, I think it's it strengthens my case in terms of that she's not willing to testify to any of the questions."  Id. at PageID.577.  And in closing argument, trial counsel argued that Cochran was not credible because she asserted her Fifth Amendment right, "And you have to ask yourself some questions. You know, who-- who's the guilty party here?  You got a guy running out the window.  I mean to me if you're running, you're guilty of something.  Otherwise, you don't run.  Jessica Cochran took the stand and took the Fifth.  What does that tell you?" Jury Trial Tr. Vol. 2 at PageID.659–660 (Dkt. 14-10).

18

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons, rather than through sheer neglect. This presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." See Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003) (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)). Counsel's decision to have Cochran invoke her Fifth Amendment right against self-incrimination in front of the jury appears to be a strategic decision to suggest that she would not be a credible witness for the prosecution. A defense attorney's decision to allow a witness to assert his Fifth Amendment rights before a jury to attack that witness' credibility is a strategic decision that defeats an ineffective assistance of trial counsel claim. See Porter v. Sexton, No. 114cv00171, 2019 WL 6971365, at *12–13 (E.D. Tenn. Dec. 19, 2019).

Because Petitioner failed to show that his trial counsel was ineffective for permitting Cochran to assert her Fifth Amendment rights in front of the jury, Petitioner is unable to establish that appellate counsel was ineffective for failing to raise this ineffective assistance of trial counsel claim on his appeal of right. See, e.g., Fautenberry v. Mitchell, 515 F.3d 614, 642 (6th Cir. 2008). Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### C. Claim 3: Prosecutorial Misconduct

Petitioner claims he was denied a fair trial because of prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004) (punctuation modified). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (punctuation modified). Prosecutorial misconduct can form

the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.  Donnelly, 416 U.S. 637, 643–645 (1974).  To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Parker v. Matthews, 567 U.S. 37, 48 (2012) (punctuation modified).

Petitioner first argues that the prosecutor made inflammatory arguments and injected issues unrelated to his guilt or innocence of the charged offenses.  He points to the prosecutor's remarks in her opening statement that, at the time of the charged offenses, Petitioner was still on probation for assault with a dangerous weapon and that he had been on parole for unarmed robbery until January 2016.  Petitioner alleges that these statements were irrelevant, unfairly prejudicial, and unsupported by the evidence, since no evidence of Petitioner being on probation or parole was admitted into evidence at trial.

The Sixth Circuit has found that there are no Supreme Court cases supporting the proposition that a prosecutor's questions that call for inadmissible answers—on the basis of relevancy—can constitute prosecutorial misconduct that rises to the level of a federal due process violation.  See Wade v. White, 120 F. App'x 591, 594 (6th Cir. 2005).  Petitioner would not be entitled to habeas relief even if the prosecutor's remarks about him being on probation and parole were irrelevant.  Id.

Moreover, although Federal Rule of Evidence 404(b) and its state counterpart Michigan Rule of Evidence 404(b) generally prohibit a prosecutor from questioning a defendant about prior bad acts, the United States Supreme Court has never held that the federal constitution forbids a

prosecutor from doing so.   Thus, the Michigan Court of Appeals' rejection of Petitioner's prosecutorial misconduct claim involving the prosecutor's mention of his parole and probation status does not entitle Petitioner to habeas relief.  See Wagner v. Klee, 620 F. App'x 375, 378 (6th Cir. 2015).

To the extent that Petitioner argues that the prosecutor's opening remarks were not supported by the evidence introduced at trial, this argument is also unsuccessful.  Not every variance between the advanced description of the prosecutor in the opening statement's summary of the testimony that he expects to introduce, and the actual presentation, constitutes reversible error when a proper limiting instruction is given.  See Frazier v. Cupp, 394 U.S. 731, 736 (1969). In the present case, the trial court instructed the jurors both at the beginning and the end of trial that the lawyers' opening statements were not evidence.  See Jury Trial Tr. Vol. 1 at PageID.365; see also, Jury Trial Tr. Vol. 2 at PageID.624.  A jury must be presumed to have followed a trial court's instructions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000).  In this case, any variance between the prosecutor's opening statement and the evidence introduced at trial did not prejudice Petitioner, in light of the trial court's limiting instruction to the jury.  See United States v. Campbell, 317 F.3d 597, 606-07 (6th Cir. 2003).

Moreover, Petitioner is not entitled to relief because the prosecutor's remark about Petitioner being on parole and probation was isolated and there was no evidence that the prosecutor deliberately attempted to inject a comment into her opening remarks that was not supported by the evidence.  See United States v. Ham, 628 F.3d 801, 810–811 (6th Cir. 2011).

Petitioner next contends that the prosecutor introduced inflammatory and irrelevant evidence about the drug Fentanyl.  Detective Street testified concerning a photograph which showed latex gloves that were recovered during the search.  The prosecutor initially asked Street

the open-ended question "And [Exhibit] 44?" Street replied, "Just latex gloves," but then added

that Fentanyl was a hazard when handling heroin.  The prosecutor asked if the State Police had

issued new protocols for handling narcotics.  Street replied that they had, adding that several police

officers had been injured from being exposed to Fentanyl, including a recent incident in which

twelve officers required treatment by Narcan.  The Michigan Court of Appeals concluded that this

evidence was relevant and admissible as follows:

> Street was qualified as an expert in narcotics law enforcement. Accordingly, he was permitted to give testimony that would 'assist the trier of fact to understand the evidence or to determine a fact in issue ....' MRE 702. Within the scope of his expertise, he explained how items such as Chore Boy pads, Zig-Zag rolling papers, and lottery tickets were related to drug use and drug dealing. The prosecutor's question regarding latex gloves was similarly related to the prosecutor's efforts to link items found in the house to drug dealing. Street's testimony that drug dealers and other persons handling narcotics in powdered form use latex gloves to protect themselves from fentanyl was relevant to explaining how this evidence further supported a finding that the drugs found in the Sigler Road house were related to drug dealing. Although there was no evidence that any of the heroin defendant possessed, sold, or handled contained fentanyl, evidence that defendant had latex gloves was relevant to whether he possessed narcotics with the intent to sell. Moreover, the evidence was not unfairly prejudicial. Street did not testify or imply that defendant had any connection to incidents in which police officers were exposed to fentanyl.

People v. Goodwin, 2018 WL 3039903, at *5.

As mentioned above, there are no Supreme Court cases which support the proposition that

a prosecutor's questions that call for answers that are inadmissible due to relevancy constitute

prosecutorial misconduct that rises to the level of a federal due process violation.  See Wade, 120

F. App'x at 594.  The Michigan Court of Appeals found that the comments about fentanyl were

relevant and admissible to help explain why the discovery of latex gloves further supported a

finding that drug trafficking was taking place at the Sigler Road address where Petitioner lived.  A

prosecutor does not commit misconduct by introducing evidence that is admissible under state law.

22

See Dufresne v. Palmer, 876 F.3d 248, 261 (6th Cir. 2017). Moreover, a prosecutor "does not commit misconduct by asking questions that elicit inadmissible evidence." Id.

Petitioner contends that the prosecutor committed misconduct by arguing that defense witness, Mandy Goltowski, "might be afraid of him. I'm not—we're not sure why. That's not in evidence but it appears she's trying to help him with her testimony." Jury Trial Tr. Vol. 2 at PageID.651. Petitioner argues that these statements implied to the jury that the prosecutor had special knowledge that Goltowski's testimony was motivated by fear.

It is improper for a prosecutor during opening or closing arguments to bring to the jury any purported facts which have not been, or will not be, introduced into evidence and which are prejudicial. Byrd v. Collins, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. Id.

When viewed in context, the prosecutor's comments indicate that she based her comments on inferences from the evidence presented in court and not upon any personal knowledge. Because the prosecutor's comments about defense witness Goltkowski being fearful was based on reasonable inferences from the evidence presented in court, was only a small portion of the prosecutor's argument, and did not create the impression that the prosecutor knew of evidence not presented to the jury, the prosecutor's comments did not deprive Petitioner of a fair trial. See Cristini v. McKee, 526 F.3d 888, 902 (6th Cir. 2008). Any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. See Hamblin v. Mitchell, 354 F.3d 482, 495 (6th Cir. 2003). Petitioner is not entitled to relief on his third claim.

**D. Claim 4: Sufficiency of Evidence**

23

As part of his fourth claim, Petitioner alleges that there was insufficient evidence to convict him of the drug convictions. The Michigan Court of Appeals rejected this claim as follows:

> Defendant's sole argument is that one item of evidence, Exhibit 65, was not subjected to laboratory analysis, but was only field tested. However, other laboratory reports, admitted by stipulation as Exhibits 50 through 53, stated that items of evidence were analyzed and determined to contain .9 grams of heroin, 7.2 grams of crack cocaine, and cocaine in the amounts 6.6 grams and 3.2 grams, respectively. The evidence was sufficient to support defendant's convictions, even without Exhibit 65.

People v. Goodwin, 2018 WL 3039903, at *6.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. at 318–319 (punctuation modified). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they

24

believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." Id.

Under Michigan law, to convict a defendant of possession with intent to deliver a controlled substance, the prosecution must prove: (i) that the recovered substance is a narcotic; (ii) the weight of the substance; (iii) that the defendant was not authorized to possess the substance; and (iv) that the defendant knowingly possessed the substance with the intent to deliver it. See People v. McGhee, 709 N.W.2d 595, 612 (Mich. Ct. App. 2005).

Petitioner is not entitled to relief on his claim. The Sixth Circuit has held: "To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule." United States v. Schrock, 855 F.2d 327, 334 (6th Cir. 1988). As long as the prosecutor presents "sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable." Id. The police field-tested Exhibit 65 and found that it contained narcotics. This is sufficient to show that Petitioner possessed a controlled substance. See United States v. Montgomery, 491 F. App'x 683, 690 (6th Cir. 2012). The other three exhibits were tested in the laboratory and were found to contain heroin or cocaine. Accordingly, the evidence was sufficient to convict Petitioner of these charges.

### E. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules

Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484-485 (2000).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case.

### F.  In Forma Pauperis on Appeal

Although this Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability.  Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  While a certificate of appealability may be granted only if a habeas petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith.  Id. at 764–765; 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.  Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed IFP on appeal.

### IV.   CONCLUSION

For the reasons set forth above, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and grants Petitioner leave to proceed IFP on appeal.

**SO ORDERED.**

Dated: May 4, 2026                                   s/Mark A. Goldsmith
Detroit, Michigan                                    MARK A. GOLDSMITH
                                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 4, 2026.

                                         s/Joseph Heacox
                                         JOSEPH HEACOX
                                         Case Manager